ALBERT MYERS, Appellee, v. D. S. PRIEST, Appellant.

Highways: OBSTRUCTION: INJUNCTION: WHO MAY SUE. Under the general rule that a private person may enjoin a public nuisance which works a special injury to him different from the general public, a road superintendent charged with the duty of maintaining the highways in his district, and who is liable for damages resulting from failure to perform that duty, may enjoin the construction of a dike which would dam the water up on a highway of his district and make it impassable.

Same: ADJUDICATION. The plaintiff in this action brought the suit in his individual capacity as road superintendent to restrain defendant from maintaining a dike which ran the water over the highway. The defendant had previously filed a petition to enjoin

the road supervisor and another from interfering with the dike, describing the defendant as road supervisor; but the office was abolished before decree was entered. Afterward the former supervisor filed a petition in intervention in his individual capacity, and on appeal it was decided that the defendant in the present action could maintain the dike in question ·as long as plaintiff maintained his. About the time the office of ·road supervisor was abolished plaintiff herein was appointed road superintendent · of the same district, but was not a party to the former suit and knew nothing about it. Held, that the decree in the former action was not an adjudication binding upon the plaintiff herein.

**Same.** A decree in a former suit would not bind plaintiff if he were suing in his representative capacity, for it was rendered when defendant therein had ceased to be road supervisor, and plaintiff . herein not having been substituted as defendant.

**Same:** EVIDENCE. The evidence in the action is reviewed and it is held sufficient to show that the dike which defendant proposed to repair and maintain was and would be a nuisance and that the injunction herein properly issued.

**Appeal:** INACCURACY IN DECREE: HARMLESS ERROR. Mere inaccuracy of statements in a decree which are not material so far as the merits of the case are concerned and do not affect the result will be disregarded on appeal.

*Appeal from Page District Court.*—HON. O. D. WHEELER, Judge.

SATURDAY, DECEMBER 18, 1909.

THIS is an action for injunction to restrain a nuisance upon a highway. There was a decree for the plaintiff. Defendant appeals.—*Affirmed.*

*Frederick Fischer* and *Jennings & Mattox,* for· appellant.

*Earl R. Ferguson, Geo. I. Miller* and *T. S. Stevens,* for appellee.

EVANS, C. J.—The plaintiff alleges that he is super-

intendent of a certain road district in Page County. He
is also described as such superintendent in the title of the
case.   He avers that the defendant is the owner of the
·South one-half of the Northeast one-fourth of section nine,
and other lands, and that a north and south highway ex-
tends along the east line of such lands; all, being situated
in plaintiff's road district.   That there is a natural swale
extending across the road from east to west which natural-
ly carries a large quantity of water across the highway and
over the defendant's said land.   That the defendant is
about to erect a dike near the east line of his said land in
order to prevent the flow ·of such water along such swale,
and that the effect of such dike will be to cause the water to
be dammed up on the highway, and to render such highway
impassable.   He prays for an injunction.   Plaintiff intro-
duced evidence to the effect that the defendant had main-
tained such dike for some years across the natural water
course, and had dammed the water ·up on the highway so
as to render it impassable, and had continued such dike
until it was broken down by force of the water some three
or four years or more ago, and that at the time of the com-
mencement of this suit the defendant was about to repair
and restore the same.

We are confronted, at the threshold of the case, with
the question whether the plaintiff can maintain the action.
It is urged by the defendant in argument that the plaintiff

1. Highways:        has neither capacity nor authority ·to sue.
obstruction:     . The basis in the record for this argument is
injunction:
who may sue.     found in defendant's demurrer to the peti-
tion, as follows:   "The petition shows on its face that the
plaintiff was employed by the trustees of Grant township
as road superintendent under section 1533 of the Supple-
ment to the Code of 1902, and is by the terms of the stat-
ute the employee, and not the principal, in the matter in
controversy.   (2) The petition shows on its face that there
is a defect of parties plaintiff, in this:   The party plaintiff,

and in whose name the case should have been brought, would be the principal, and not the subordinate, and the plaintiff by his own statement has brought suit as subordinate and employee in his own name; the pleading showing on its face that he had no authority so to do."

The argument of defendant presents at this point questions which were not raised by this demurrer. The real point of the demurrer was that the township trustees were necessary parties plaintiff, and that the plaintiff was only the agent of such trustee. It is clear to us that the demurrer was properly overruled. While the duty of appointing the superintendent is placed by the statute upon the trustees, as well as the duty of supervision, nevertheless the statute itself fixes the duties of such superintendent when appointed, and he is liable under his official bonds for the performance of his official duties. The broad question whether a road superintendent as such may maintain an action in his representative capacity, in the absence of any statutory provision conferring such authority upon him, is one upon which we withhold judgment at the present time. Under the facts as they are claimed to be on behalf of the plaintiff in this case, we think he has an undoubted right to maintain this action in his individual capacity. Assuming the facts to be as claimed by the plaintiff, defendant was about to erect and cause a public nuisance upon the highway. It has always been held by this court that equity will enjoin a public nuisance at the suit of a private plaintiff if such works a special injury to such plaintiff distinct from the injury suffered by the general public. *Hougham v. Harvey*, 33 Iowa, 203; *Ingram v. Railroad Co.*, 38 Iowa, 669. The statute imposes upon a road superintendent the duty of maintaining the highways in his district in proper repair, and charges him with personal liability for damages which may result to individuals for failure to perform such duty. Code, sections 1557-1560. Taking the case as made by the plain-

tiff, defendant's proposed dike was not only unlawful, but it presented a manifest impediment to the performance of his duties by the plaintiff. Without holding that the plaintiff would necessarily be liable for damages for failure to remove the proposed dike, it seems to us that the menace involved to the plaintiff by the situation so made was a threatened injury to him distinct from that of the general public. The petition of plaintiff is sufficient in its allegations to enable him to stand in court in his individual capacity. The allegation that he is the superintendent of the district in question is an essential allegation for that purpose. There was no error therefore in overruling the demurrer.

II. It is urged by the defendant that this controversy has been heretofore adjudicated, and the plea of prior adjudication has been interposed. The case in which such prior adjudication is claimed to have been had is *Priest v. Maxwell,* 127 Iowa, 744. In 1902 one George Maxwell was road supervisor of the highway in question. He was the owner of the southeast one-fourth of section four in the same township. This land lay eighty rods north of the land of the defendant. Julia Maxwell, the wife of George Maxwell, owned the northwest one-fourth of section ten, lying directly east across the highway from the land of defendant. The defendant was maintaining the dike at that time, and Maxwell threatened to remove the same. On May 26, 1902, the defendant herein filed a petition asking for an injunction against Maxwell and his wife, Julia, to restrain them from tearing down his dike. Such petition described George Maxwell as the road supervisor of the district and asked an injunction restraining him from interfering with defendant's dike. No further proceeding appears to have been had in such case in the year 1902. In April, 1903, the office of road supervisor was abolished by statute, and George Maxwell ceased to be road supervisor by reason

2. SAME: adjudication.

of that fact. About the same time the plaintiff herein was appointed road superintendent. He was not made a party to the suit by substitution or otherwise; nor does it appear that he had anything to do with it, or knew anything about it. No other proceedings appear to have been had in such suit until October, 1903, when Julia Maxwell filed her answer and cross-bill therein, and George Maxwell in his individual capacity filed a petition of intervention, and they were thereafter usually referred to in the record as "the defendant and intervener." The trial court dismissed the petition. There was an express finding of fact by the trial court that George Maxwell had ceased to be road supervisor. The order of dismissal entered below was reversed in this court. *Priest v. Maxwell, supra.* This reversal was had upon the theory that the controversy was one between Priest and the Maxwells individually. It appeared from the evidence that the Maxwells were also maintaining a dike on the east side of the highway. The natural course of the water on Mrs. Maxwell's land, as it approached the highway from the southeast, was that a part of it would flow north towards George Maxwell's land, and the other part would flow west over the highway and over Priest's land. The Maxwells had constructed a dike extending east and west for the purpose of preventing the flow of water toward the north. The holding of this court was that as between the parties before it, and as against the Maxwells, Priest was entitled to maintain his dike as long as they maintained theirs. It is clear to us that the adjudication involved in that case is not binding as such upon the plaintiff in this case.

Nor would it be binding if we should deem him here in his representative capacity as road superintendent. Assuming, for the sake of argument, that Priest by his action could have bound the public by making the road supervisor a defendant in his representative capacity, he was nevertheless bound to have him

3. SAME:

in court as such at the time of decree rendered. The is-
sues upon which the case was tried were made in October,
1903, nearly eighteen months after Maxwell had ceased to
be an officer. Maxwell had no authority at that time to
bind the public in any way by any act of his. If it
was competent for the plaintiff therein to litigate the ques-
tion as against the public by making the road supervisor
defendant, it was also competent for him, and incumbent
upon him, to procure a proper substitution of parties after
Maxwell ceased to be road supervisor. In support of the
plea of prior adjudication, appellant has presented to us
an abstract of the pleadings and proceedings and evidence
in such former case. Such abstract, however, does not dis-
close in what capacity George Maxwell was served with
notice, or with the writ of injunction, if served at all.
It is clear to us that the plea of prior adjudication can
not be sustained.

III. As already indicated, the trial court found
that the dike which the defendant proposed to repair and
maintain was and would be a nuisance, and it enjoined
4. SAME: the defendant from repairing the same. The
evidence. water course involved comes from the south-
east over the lands of Julia Maxwell in section ten. A
short distance east and southeast of the highway the sur-
face of the ground is uneven, and its elevation increases
rapidly, and the water course is well defined and narrow.
As it approaches the highway, it comes upon low level
ground, and the water, especially in early times, spread
out over considerable space. After a heavy rain, the
water passed to the west over the defendant's land in a
sheet from two hundred to five hundred feet wide. In
high water some of the water from this swale passed to
the north; but the greater part of it passed as already in-
dicated. For several years the road has been in course
of improvement and has been graded to some extent
and has ditches on either side. At the present time it

has a bridge with a span of sixteen feet between the land of defendant and Julia Maxwell. A short distance west of this bridge upon his own land is where the defendant has heretofore maintained the dike. Prior to the construction of the present bridge, a similar bridge had been constructed at a point eight or ten rods north of the present bridge. This also was opposite the defendant's land. At this time the defendant erected a dike opposite the end of such first bridge; such dike being about two feet high. At the same time the Maxwells were maintaining a similar dike on the east side of the road to prevent the water from passing to the north, as already indicated. When the present bridge was located in 1901 or 1902, the defendant extended his dike and enlarged it so as to obstruct the flow of water passing under the new bridge. A short distance south of the bridge in question is a small culvert in a low place, and the defendant extended his dike opposite this culvert also. The dike, when completed, was several hundred feet long and several feet high, and resulted in damming water upon the highway and rendering it wholly impassable in times of flood. In 1904 the water carried down some parts of the dike opposite the bridge, and these have not since been repaired. In 1906 the defendant proposed to repair and rebuild such dike, and this furnished the occasion for the present litigation. The Maxwells obliterated their dike on the east side of the highway some time prior to the beginning of this action.

There is no question under the evidence but that defendant's dike is laid across the natural course of the water. Within a quarter of a mile west of this dike is a deep depression, through which the water runs toward the Nishnabotna River. The most that the defendant can claim is that in high water some of it will flow north. Much the greater part of it, however, has always passed over defendant's land. The Maxwells have ceased to maintain any

artificial obstruction, and the floods may yet take their natural course of division. It is claimed, however, on behalf of the defendant, that there has been a natural filling of the land in the meantime, and that less water will pass to the north then formerly; but this will not justify the defendant in maintaining an undoubted public nuisance. The evidence is voluminous, and we have gone through it with care. It will serve little purpose for us to enter into a detailed discussion of it. We concur in the views of the trial court.

There are some inaccuracies of statement in the formal decree. These are pointed out in the brief of appellant. They seem to us to be quite immaterial as far as the merits of the case are concerned. The statement in the decree that the defendant owns the northeast one-fourth of section nine, and the further statement that the bridge is a short distance south of the north line of section nine, is inaccurate, in that the defendant owns only the south one-half of such northeast one-fourth, and the bridge is a short distance south of the defendant's north line, rather than a short distance south of the north line of section nine.

5. Appeal: inaccuracy in decree: harmless error.

These and some other slight inaccuracies do not, in our judgment, affect the result.

The decree entered below must be *affirmed*.