CLAY BOWERSOX, Administrator, Appellant, v. BOARD OF SUPERVISORS OF JOHNSON COUNTY et al., Appellees.

**HIGHWAYS:** Unaccepted Dedication. *Dedication* of lands for streets and alleys, by the filing and recording of a town plat, does not work the creation of a public "road" *until there has been a public acceptance of the dedication.* It follows that an order of the board of supervisors which assumes to vacate a street, the dedication of which has never been expressly or impliedly accepted by the public, is a nullity. So held where a *dedication* had remained unaccepted for some 60 years. (See Secs. 917, 1482, 1507, Code, 1897.)

**DEDICATION:** Town Plats—Acceptance. The filing and recording of a town plat acts as a deed in fee to the public of the lands set apart for streets and alleys, but, like all other deeds, an acceptance is absolutely necessary. In other words, such lands do not become public "roads" until accepted by the public.

**DEDICATION:** Acceptance—Evidence. It is suggested that evidence of the acceptance of a town plat dedication of lands for streets and alleys, aside from a formal order of acceptance by the public authorities, may consist of:

(a) The expenditure of labor or money thereon by the public authorities.

(b) The general or frequent use of the land as a street or road.

(c) The general recognition by the public of the land as a public highway.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

MAY 17, 1918.

PROCEEDING in certiorari to test validity of an order made by the board of supervisors. The writ of certiorari was not sustained, and the plaintiff appeals. The material facts are stated in the petition.—*Reversed and remanded.*

*Milton Remley*, for appellant.

*O. A. Byington* and *E. B. Wilson*, for appellees.

WEAVER, J.—In the year 1856, one Jacob Shuey, owning a tract of land in Johnson County, platted the same into blocks, lots, streets, and alleys, and gave to the place the name of Shueyville. The plat was duly re-

1. HIGHWAYS: unaccepted dedication.

corded. How many of the lots were sold and conveyed to purchasers does not appear. It is apparent, however, that, like many other ambitious town plat schemes of that day, the hope of building and developing a city of large proportions did not materialize, and it remains still a small, unincorporated village.

A copy of the plat, put in evidence, indicates what purport to be improvements of some kind on perhaps 20 or 30 different lots. Extending north and south through the plat, or a portion thereof, are marked three streets, named Main, Mill, and Oak, reading the names in their order from east to west. The east and west streets intersecting the first three above mentioned are Jefferson, Deen, West, and Water, reading the names in their order from south to north. The plaintiff is, and for some time has been, the owner of five lots lying immediately south of West Street and west of Mill Street. He also owns two and one-half lots immediately

east of Mill Street and directly opposite the five lots first
mentioned.   In April, 1915, one Kopecky, a resident of the
neighborhood, presented a petition to the board of super-
visors of Johnson County, asking the vacation of that part
of Mill Street between West Street and Deen Street, and
giving as reason for such order that such street is "not used,
or is very seldom used by the public for traveling purposes."
Upon the making of this application, notice was issued and
served, and the matter came on for hearing at a later date.
The plaintiff John Novotny (since deceased) appeared there-
to and opposed the order petitioned for, and presented a re-
monstrance against such action, signed by several persons.
The objections were overruled, and an order entered, as
prayed, vacating Mill Street at the point in controversy.
Thereafter, this proceeding in certiorari was instituted in
the district court, to annul the order of vacation on the
ground that the board of supervisors had no authority or
jurisdiction in the premises.   On hearing the evidence and
examining the record, the court ruled that the supervisors
were vested with authority to vacate the street, and dis-
missed the writ.   The plaintiff appeals.

So far as counsel attempt to discuss the necessity or ad-
visability of vacating the street, or whether the same is
sought or demanded as a matter of public interest, the argu-
ment is beside the one controlling question in the case.   If
the board of supervisors had any power or discretion to
order the vacation, its action cannot be reviewed upon cer-
tiorari; and if it had no such power or discretion, then its
order to that effect is void.   We therefore come directly to
the real inquiry: Is power or authority vested in the board
to vacate the street, or any other part of the plat?

If such exists, it must have been conferred by statute.
This, the appellee concedes, but says that such authority is
found in Code Sections 1482 and 1507, found in the general
chapter on the subject of roads.   They read as follows:

"Section 1482. The board of supervisors has the general supervision of the roads in the county, with power to establish, vacate and change them as herein provided."

"Section 1507. All public streets of villages are a part of the road; and all road supervisors or persons having charge of the same, in the respective districts or villages, shall work the same as provided by law."

For the purpose of having before us all the statutes which may be thought to bear upon the constructions to be placed upon the cited sections, we cite also Code Section 917, which provides that the due execution and record of a town plat "shall be equivalent to a deed in fee simple of such portion of the premises platted as is set apart for streets or other public use."

These statutes have had frequent consideration by this court, and it is now well settled that, while the making and recording of the plat constitute a deed of dedication to the public of the designated streets, such plat-

2. DEDICATION:
town plats:
acceptance.

ting or dedication does not have the effect to make them public streets or highways until the public has in some manner indicated its acceptance thereof. Until such acceptance, the spaces left between the blocks and marked as streets are ways, in which the purchasers of lots acquire an easement of passage for the convenience of and access to their respective premises; but they are not public roads or highways. Until there has been such an acceptance, the plat or deed of dedication remains, so far as the general public is concerned, in the nature of a mere tender or offer to dedicate. *Chrisman v. Omaha & C. B. R. & B. Co.*, 125 Iowa 133; *Incorporated Town of Cambridge v. Cook*, 97 Iowa 599; *Bell v. City of Burlington*, 68 Iowa 296; *Uptagraff v. Smith*, 106 Iowa 385; *Burroughs v. City of Cherokee*, 134 Iowa 429. Such tender may be withdrawn, and the offered street may be vacated by the dedicator or proprietor at any time before the dedication had been made effective

by acceptance, in so far as it does not prejudice the rights or privileges of any other lot owner in such plat. Code Sections 918 and 919; *Conner v. Iowa City,* 66 Iowa 419; *McGrew v. Town of Lettsville,* 71 Iowa 150. In other words, until the dedication has been accepted, and subject only to the easements, if any, which may have been acquired by purchasers of lots within the tract, the proposed streets and alleys remain private property, and the tender of dedication may be withdrawn in the manner provided by the statute last above cited; and it has also been held that, if the proprietor of the plat, at any time before the acceptance of his dedication, sells and conveys the land for other than public purposes, such conveyance operates as a revocation of the offer to dedicate. *Minneapolis & St. L. R. Co. v. Town of Britt,* 105 Iowa 198, 203. It follows of necessity, from the foregoing statutory provisions and the construction thereof, as settled by numerous decisions of this court, that, until the dedication tendered by the making and filing of a plat has been accepted by the public, the spaces left between the blocks of land for street purposes are not public roads, and are, therefore, not subject to vacation and change as such, under the general law which authorizes and controls the establishing and vacation of public roads, streets, and highways. To quote briefly from some of our cases:

"From these different sections, it is manifest that the word 'street' is used to designate the spaces left between the lots for public travel. The title thereto does not vest in the city or town prior to its acceptance, and until then it is not deemed a road or public thoroughfare." *Chrisman v. Omaha & C. B. R. & B. Co.,* 125 Iowa 133, 137.

"The filing of the plat is made equivalent to a deed in fee simple to the streets and alleys, but, like other deeds, requires acceptance before it can be effective." *Burroughs v. City of Cherokee,* 134 Iowa 429, 432.

Such a dedication "may be withdrawn by the donor at

any time before acceptance by the public." *Minneapolis &*
*St. L. R. Co. v. Britt,* 105 Iowa 198, 203.

The streets and alleys, "upon the acceptance of the dedi-
cation tendered by filing the plat, are under the authority of
the cities and towns, whose councils may 'widen, straighten,
narrow, vacate, extend, improve, and repair them.' " *Talbert*
*v. Mason,* 136 Iowa 373, 380.

An acceptance of the grant by the public is quite as es-
sential to the establishment of the highway as is the dedica-
tion by the owner of the soil. *Manderschid v. City of Du-*
*buque,* 29 Iowa 73.

The foregoing is sufficient to make clear that, in the case
at bar, to give the board of supervisors any power to vacate
the platted street in controversy, it must appear that such

3. DEDICATION:
acceptance:
evidence.

street was a public road, and that, in order
that it be treated and considered a public
road, there must have been something in the
nature of a public acceptance of the dedication. Not that
there needs to have been any formal action taken or formal
record made by any public authority, in order to constitute
a sufficient acceptance; possibly the expenditure of labor
or money in caring for the street by the officers charged
with such duties, or the assumption of control over it by
such officers in removing obstructions therefrom, or even
anything like general or frequent public use of the street
as a highway, or its general recognition as such by common
consent of the local public, would justify a finding of ac-
ceptance, within the meaning of the law as we have found
it to be; but there must be some tangible or substantial
ground on which to base it. A careful examination of the
entire record fails to reveal any evidence of this kind.

To render the situation somewhat clearer, it should
be said that, running north and south through the plat of
Shueyville, along the course of what is marked as Main
Street on the plat, there is a public county or state road,

extending from Iowa City to Cedar Rapids. The street sought to be vacated is parallel to this public road and only about 300 feet therefrom, and is not a part of any road extending beyond the plat in either direction. There are no houses facing upon it. No work has ever been done upon it, or improvement of any kind made upon it. It is covered with unbroken blue grass sod, from side to side, and, although there is nothing to obstruct travel therein, it has been used for that purpose very rarely. Persons on foot do pass that way, from time to time. Some of the witnesses say that they have seen wagon tracks upon it, but no one testifies to the fact of seeing it so used. Indeed, one of the defendant's witnesses, who has been familiar with the situation for many years, and says the street has been traveled some," says he never saw a team on the street. Indeed the very reason, and only reason, on which the petition to vacate the street is based, is that it is *not* used by the public; and it is very clear that the fact in this respect is substantially as said by one of the witnesses, that the use made of the street has "not been any different from what it would be on an outlying uninclosed lot." The very fact that the several lot owners living on the sparsely settled plat have an easement in and right to use the platted streets as a means of access to their property, and that this right is held by them regardless of the acceptance of the dedication, even though such streets never become public roads, sufficiently explains the nature of the very slight use which has been made of Mill Street.

Not only is there no showing of any acceptance of the dedication in this instance, but we think that such an acceptance is clearly negatived. Mill Street, therefore, never became a public road, and the board of supervisors was without authority or jurisdiction to vacate the plat or the street which formed a part of it. The order of vacation being void for want of jurisdiction in the board, the writ of

certiorari should have been sustained. The judgment appealed from will, therefore, be reversed, and the cause remanded, with direction to the district court to annul the order of the board of supervisors for the vacation of the street in controversy.—*Reversed and remanded.*

Preston, C. J., Gaynor and Stevens, JJ., concur.